## GUSTAFSON v. AMERICAN LAND CO.*
### (No. 343-3719.)

(Commission of Appeals of Texas, Section B. March 21, 1923.)

**Principal and agent ⬥189(1)—Vendee's pleading of fraud held not to show that the person making the representations did so as agent of vendor.**

A vendee's pleading of fraudulent representations by L., with whom he negotiated, *held* insufficient to show that they were made by L. in behalf of and as agent of the L. company, vendor, it merely alleging that during all the time L. and others were conducting the company's business as its officers, agents, and representatives, and that the company received the benefits from the sale.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by the American Land Company against V. Gustafson. Judgment for plaintiff was affirmed by the Court of Civil Appeals (234 S. W. 244), and defendant brings error. Affirmed.

J. C. Myrick, of Harlingen, and Spears & Montgomery, of San Benito, for plaintiff in error.

Canales & Davenport, of Brownsville, for defendant in error.

HAMILTON, J. Defendant in error brought this suit in the form of trespass to try title, praying for judgment for recovery of title and possession of 115.6 acres of land described in the petition and situated in Cameron county. Plaintiff in error answered by general demurrer, plea of not guilty, and by cross-action for damages for fraud and deceit. In his cross-action, plaintiff in error alleges:

"Prior to January 7, 1917, one Thos. F. Lee entered into correspondence and negotiations with defendant relative to the purchase of land in Cameron county, and said negotiations resulted in the purchase by defendant through said Lee of the land described in plaintiff's amended original petition, and the execution of a certain contract for deed, dated January 7, 1917, executed by said Thos. F. Lee and defendant and his wife, Mrs. Olivia Gustafson. * * *

"By the terms of said contract defendant agreed and promised to pay for said 125 acres of land $5,400 cash on or before March 5, 1917, and to execute his five purchase-money notes for $3,240 each on the execution and delivery of the deed mentioned in said contract, said notes to bear interest at the rate of 6 per cent. per annum from date to maturity, and 10 per cent. interest per annum thereafter, and to become due, respectfully, one, two, three, four, and five years after date, and by the terms of said contract said Thos. F. Lee agreed and promised to convey said 125 acres of land to defendant."

In the next succeeding paragraph, he alleges that:

"On or about May 5, 1917, defendant paid to Lee Land Company said cash payment of $5,-400, which was received by said Lee as part compliance with said contract. * * *

"Thereafter, at a date not now remembered by defendant, but which is well known to plaintiff, and at a date subsequent to May 15, 1917, O. E. Stuart, vice president of Lee Land Company, delivered to defendant two deeds, executed by said Lee Land Company to defendant, dated May 15, 1917; as follows."

Then he sets out the terms of the deeds and other matters not pertinent here. Afterwards he pleads that:

"Said land is situated in Cameron county, Tex., in that part of the state where the rainfall is insufficient and so irregular as to make irrigation necessary to the successful cultivation and growing of crops, and said land was sold to and purchased by defendant as irrigated land, and as land that could be irrigated for agricultural purposes.

"At the date of the deeds aforesaid, to wit, May 15, 1917, said Lee Land Company was a private corporation, duly incorporated under the laws of the state of Texas, and its principal office, was at Dallas, Tex., and O. E. Stuart was vice president of said corporation. Defendant does not know whether said company was incorporated at the date of said contract—

that is, January 7, 1917—but plaintiff knows when said company was incorporated, and thereafter, at a date not known to defendant, but well known to plaintiff, the charter of said Lee Land Company was amended, by which amendment the name was changed to American Land Company of Texas, the plaintiff in this suit, and by said amendment plaintiff succeeded to all the rights, privileges, and benefits, duties, obligations, and undertakings of said Lee Land Company with respect to the matters and things herein set out, and said cash payment of $5,400 was paid to and received by said Lee Land Company, and said notes for $3,240 were executed and delivered to said Lee Land Company in payment for said 115.6 acres of land as aforesaid.

"At the time of the execution of the contract aforesaid, said Thos. F. Lee was the agent for the sale of said land, and was the sales agent and representative and agent of Lee Land Company at the date of said deed, and continued to be such agent and representative of said Lee Land Company and of plaintiff up to about the latter part of the year 1918. * * *

"That before defendant executed said contract for deed, and executed and delivered said five purchase-money notes for $3,240 each, and at the times of the execution and delivery of said contract and notes, said Thos. F. Lee represented and stated to defendant as follows:

"That a tract of 15 acres of land in the brush about four miles west of Harlingen had been selected and dedicated and set apart, on which was to be constructed buildings for the use of defendant and others purchasing lands from him and his associates and company, as a community, said buildings to be a community house, a community school building, and a community church building, to be constructed on said 15 acres, to be set in ample grounds, beautifully parked, with palm-lined drives threading in and out among said buildings, and that everything would be done to make said community center beautiful, homelike, and attractive, and that said 15 acres had been set apart and dedicated to said community, and that there would be constructed thereon said community buildings of most modern types, adapted to the needs of this climate and suitable for the purposes of said community, at a cost of $225,000, to be paid by the company; and that 10 acres of said 15-acre tract would be set to citrus trees, and cultivated and cared for by the company until they became revenue-producing, and that the revenue arising therefrom would be used for the support and maintenance of said community house, church, and school buildings, and that all were to be conveyed to said community under the name of Lee Land Community or some other acceptable and appropriate name.

"Said Thos. F. Lee pointed out to defendant a tract of 37 acres of land, in the vicinity of said 15 acres aforesaid, which said land had been set apart and dedicated to said community, upon which would be constructed a lake and clubhouse, and said lake would be stocked with fish and supplied with boats, and said clubhouse would be furnished and equipped with modern furniture and everything necessary to make it comfortable for the use of the members of the community, such improvements to cost about $100,000, to be paid for by the company, and that the same would be conveyed to said community in the same manner as said 15 acres and improvements thereon.

"That there would be installed on said 15 acres, at the cost and expense of the company, an up-to-date electric light and ice plant, of sufficient capacity to furnish the members of said community ice for their use and electricity for lights, power, and cooking, at reasonable cost and expense to consumers.

"Maps were exhibited, showing thereon said palm-lined drives, and roads, streets, and avenues through said 15 acres, and through and along the lines of the lands then being sold and offered for sale, among said streets and avenues were Lee Land avenue and Palm drive, the former of which passed by the land which defendant had purchased for his home, and on which he built improvements for his home, and that said Lee Land avenue would be surfaced with shell, all at a cost of about $75,000, to be paid by the company.

"That said land was under an irrigation system, with pumping plant, adequately equipped, and laterals and canals, through and by which water for the irrigation of the land defendant was about to purchase, and did purchase, and other land in the vicinity would be furnished for the irrigation of all of said lands, including the lands herein described, and that, while at the time of the making of said contract the laterals had not been constructed to the land defendant purchased, said laterals would be constructed, and were then being constructed, so that water could and would be furnished for the irrigation of defendant's said land within six weeks from the date of said contract for deed, and that all of said land was irrigable.

"That at the time defendant purchased said land he told said Thos. F. Lee that 125 acres of land was more than he desired to purchase, and said Lee replied that there need be no difficulty in that respect; that if defendant would purchase that quantity of land, and later learned that he could not pay for all of it, and desired that same be done, he would sell said land or a part of it for defendant, and stated that said land would increase in value, and that he would sell same, or a part thereof, for defendant at the market price at time of sale, and that in this manner defendant would be enabled to protect himself from any hardship incident to purchasing more land than he at the time desired or thought he ought to purchase, but, relying on said Lee's promise to sell said land for defendant later if need should arise, he purchased the quantity which said Lee wished him to purchase.

"Each and all of said representations were made by said Lee before and at the time of entering into said contract for deed, and before and at the time of the payment of said $5,400 and the execution and delivery of said five purchase-money notes, and each and all of said statements and representations were made for the purpose of inducing defendant to purchase said land, and same were material, because if said statements and representations had been true, and had been performed and complied with, said land would have been more valuable than it was when defendant purchased and than it is now. Said land in the condition it was when purchased by defendant was of the

reasonable value of $40 to $50, whereas, if all the promises and agreements made as aforesaid had been complied with and had been true, said land would have been reasonably worth the sum defendant paid and agreed to pay for same.

"At the time of entering into said contract for deed, defendant was a stranger in this section, and was not familiar with conditions, and said land was in the brush, and defendant could not know, and did not know, more than he could see by looking at said land, and that was to the effect that said land appeared to be level, and the soil appeared to be fertile, and of the kind and character which defendant wished to buy, but defendant learned, as is hereafter set out, that 10 acres of said land was too high to be irrigated.

"At that time he had known said Lee for several months, and from defendant's association with said Lee he had come to believe he was reliable and trustworthy, and defendant did not believe that said Lee would deceive, overreach, or mislead defendant to his hurt, and when said statements and representations aforesaid were made by said Lee to defendant, defendant believed them to be true in so far as they related to matters and things in existence, as set out aforesaid, and that the matters and things which he said and promised would be done in the future would be done and performed. But said representations and statements were untrue, and said promises and agreement to do the matters and things in the future were untrue, and the same were made for the purpose of deceiving and misleading defendant, and did deceive and mislead him to his great hurt, as is hereinafter set out, and by reason of said statements and representations defendant was induced to purchase said land, and did purchase same.

"If defendant had not believed said statements and representations with respect to the dedication of said 15 acres and 37 acres of land were true and that the improvements aforesaid would be made thereon as promised, he would not have purchased said land. Nor would he have purchased the same if he had not believed the statements and representations with respect to said irrigation system, and that he would be able to get water for the irrigation of his said land within six weeks and thereafter, as promised. And he would not have purchased said land if he had believed the representations and promises aforesaid that said Thos. F. Lee would resell said land, or a part thereof, for him. And in this particular, after defendant had discovered that said representations were untrue and false, during the years 1917, 1918, and 1919 repeatedly asked said Lee and said O. E. Stuart and R. T. Stuart to sell said land for him, and that they each and every time agreed and promised to resell the same for defendant, up to a short time before the filing of this suit, and defendant did not learn till then that it had not been their intention all along to comply with said promise.

"By way of inducement, as showing the course of business of said Lee Land Company and of plaintiff, and of their efforts to prevent defendant from learning of the untruth and falsity of said statements and representations, all of said statements and representations as to the capacity and condition of said irrigation plant and system to furnish an adequate supply of water for irrigation of defendant's land, and other lands in the vicinity, and as to the setting apart and dedication of said 15 acres and 37 acres of land for community purposes, and the improvements to be made thereon, were at divers and sundry times made and repeated by said Lee in the presence and hearing of said Stuarts, and at such times they, the said Stuarts, did not disaffirm said statements and representations, but at times tacitly assented thereto, and at other times said Stuarts verified and adopted said statements as true, and during these times said Stuarts were officers and agents of said Lee Land Company and plaintiff as aforesaid, and at said times beautiful maps and pictures of said grounds and improvements were exhibited.

"At the times said representations and statements were made as aforesaid, before and at the time of the execution of said contract for deed, and the execution of said vendor's lien notes, as well as thereafter, said Lee Land Company and plaintiff knew said statements and representations were untrue, and they did not at any of the time intend or expect to comply with said promises and agreements."

Plaintiff in error then alleges the dates on which he learned that the irrigation system was not as represented, and that the "15-acre and the 37-acre tracts of land had not been set aside and designated for community purposes, and that said improvement would not be made thereon," that "during all the times aforesaid said Stuarts and said Lee were conducting the business of said Lee Land Company and plaintiff as their officers, agents, and representatives, and the said Lee Land Company received the benefits arising from said sale to defendant of said 115.6 acres of land; that is, said cash payment of $5,400 and said five vendor's lien notes for $3,240 each, which notes plaintiff now claims to own, and is now seeking to recover from defendant said land."

Plaintiff in error then alleged the claimed damages, and prays that plaintiff take nothing by the suit; "that said conveyance of said 115.6 acres of land by said Lee Land Company to defendant, and said five purchase-money notes therein recited be canceled, and title to said land be vested in plaintiff; that defendant have judgment for his said damages, to wit, said $5,400 paid as cash payment for said land, with interest at 6 per cent. per annum from May 5, 1917; for improvements on said land in the sum of $4,450, and for the loss of crops for the year 1917 in the sum of $12,760 with 6 per cent. interest on said two sums per annum from January 1, 1918; actual damages resulting from being wrongfully and maliciously dispossessed of said land in the sum of $8,425, with 6 per cent. interest per annum, and for his exemplary damages in the sum of $15,000, and for such other and further relief, general and special, at law and in equity, as defendant may show himself entitled to."

He then pleads that:   .

"If he is not entitled to have his deed and notes canceled and to have his damages for said cash payment and for said improvements and for the loss of crops for the year 1917, then by way of defense against said notes defendant respectfully represents to the court that by reason of the fraud as hereinbefore set out there was a failure of consideration on the part of plaintiff in conveying to defendant what he thought and was induced by said fraud to believe that he was purchasing, and in the further fact that at the time defendant purchased said land said Thos. F. Lee represented to defendant that all of said land could be irrigated from irrigation system as it then was and would be constructed, and that if any of said land could not be irrigated from said irrigation system, defendant would not be required to pay for the same.

"That at the time of said purchase said land was unimproved and in the brush, that is, it was uncleared, and defendant could not know, and did not know from an inspection of the same, whether all of said land could be irrigated or not, but when the same was cleared and levels taken it was found that 10 acres of said land was too high to be irrigated from said system, and said 10 acres without irrigation was then of the reasonable value of $5 per acre, and, defendant having paid and agreed to pay $186.85 per acre, is entitled to recover, from plaintiff the difference between the reasonable market value of said land as it then was and the value which he paid and agreed to pay for the same, that is to say, the sum of $1,838.50, and entitled to have credited upon said notes said sum.

"That at the time defendant purchased said land and the condition and circumstances said land was in at that time, the reasonable market value of that part of said land which could be irrigated from said system, to wit, 105.6 acres, was of the reasonable market value of $50 per acre, and was not of the value of $186.85 per acre, which Thomas F. Lee and plaintiff induced defendant to believe it was worth by reason of the false and fraudulent representations aforesaid, and to the extent of the difference between $50 an acre and $186.85 an acre, or the sum of $13,550.46, there was a failure of consideration resulting from the fraud aforesaid."

He then asks again for damages for deprivation of the possession and use of the land by the writ of sequestration, and prays for damages resulting from alleged failure of consideration as above shown, actual and exemplary damages arising out of the alleged wrongful sequestration and for general relief.

Defendant in error answered the cross-action by general demurrer and 19 special exceptions. The trial court overruled the general demurred, but sustained all the special exceptions. Defendant refused to amend. Plaintiff introduced its evidence. Defendant offered none. Judgment for plaintiff was rendered, and defendant appealed. The Court of Civil Appeals affirmed the judgment of the trial court. 234 S. W. 244.

These exceptions fall into groups rais-ing the following issues: Insufficiency of plaintiff in error's pleadings to show that the promises and representations of Lee, relied on by Gustafson, were made by Lee in behalf of and as the agent of the Lee Land Company and binding on defendant in error; misjoinder of causes of action; limitation; that the misrepresentations alleged were mere promises by Thos. F. Lee, nonfulfillment of which did not amount in law to fraud; that plaintiff in error's pleadings showed affirmatively that he had waived any right he may ever have had to rescind his contract for the purchase of the land in controversy.  The seventeenth and nineteenth of these exceptions are as follows:

"(17) Plaintiff excepts specially to all allegations of defendant's said answer, wherein it is alleged that one Thos. F. Lee made certain representations and promises to induce defendant, and which did induce defendant, to enter into a written contract with him for the purchase of the land sued for by plaintiff, in that it affirmatively appears from said answer that in making such representations, if he did make them, said Lee acted for himself, and not for plaintiff, and that plaintiff was not, and did not purport to be, a party to said contract."

"(19) Plaintiff excepts specially to all allegations of fraud and misrepresentations alleged by defendant in his said answer to have been made to induce him to enter into a contract to purchase the lands sued for by plaintiff herein, in that it is not shown that said representations were made by plaintiff, or by any person authorized by it."

On the assignment presenting error in the trial court's action in sustaining the seventeenth and nineteenth exceptions, the Court of Civil Appeals at San Antonio, speaking through Justice Smith, said:

"Appellant alleged that the fraudulent representations made by Lee were made during the negotiations leading up to the execution of the contract of sale of January 7. But, in setting out the negotiations and transactions culminating in the delivery of the final papers, appellant does not undertake to connect Thos. F. Lee with appellee, the American Land Company, or with its predecessor, the Lee Land Company.  There was no suggestion that he was an authorized agent of or acting for either company, or that he was acting otherwise than in his own individual capacity.  In fact, the language of the allegations of the details of the negotiations peculiarly negative any theory that Lee was acting in a representative capacity.  The allegations show that the negotiations and correspondence resulting in the contract were carried on by Lee in his individual capacity, and that he executed the contract as an individual, and not as agent of another. It is true that later on in his pleadings appellant alleged that throughout the entire transaction Lee was 'sales agent and representative' of appellee and the Lee Land Company, but this allegation is neutralized by the subsequent allegation that appellant does not know whether the Lee Land Company was incorporated at the time Lee executed the contract of sale, or the character and extent of his agency and

authority for the Lee Land Company and appellee. There is no allegation that Lee made the alleged fraudulent representations and promises as an agent of any person or corporation, or otherwise than upon his individual responsibility. There is no allegation that appellant understood at the time of the alleged fraud of Lee, or of the execution of the contract with Lee, that the latter was acting for the Lee Land Company or for appellee, or otherwise than for himself, or that appellant expected, or was led to believe, or had any reason to believe, that the Lee Land Company or appellee would carry out, or was under any obligation to carry out, the alleged fraudulent promises made by Lee. In this state of appellant's pleadings we do not think there are sufficient allegations to charge the land companies with any responsibility for Lee's statements or liability for his promises, and for this reason the trial court in our opinion correctly sustained appellee's exceptions to appellant's cross-action. Especially is this true in view of the rule that in testing the sufficiency of demurrers the pleadings attacked must be construed most strongly against the pleader."

This expression is more favorable to plaintiff in error than his pleadings. He does not plead that "throughout the entire transaction 'Lee was "sales agent" and representative of appellee and the Lee Land Company.'" The nearest approach to such allegation is that portion of plaintiff in error's pleading above quoted as follows:

"During all the times aforesaid said Stuarts and said Lee were conducting the business of said Lee Land Company and plaintiff as their officers, agents, and representatives, and the said Lee Land Company received the benefits arising from said sale to defendant of said 115.6 acres of land, that is, said cash payment of $5,400 and said five vendor's lien notes for $3,240 each, which notes plaintiff now claims to own, and is now seeking to recover from defendant said land."

This is not an allegation that Lee was acting as the agent and representative of the Lee Land Company in the representations and promises alleged to have been made by Lee upon which Gustafson bases his cross-action. Plaintiff in error nowhere alleges that Lee was acting as the agent and representative of the Lee Land Company in making the representations and promises upon which he attempts to found his cross-action, and we approve and adopt the expression of the Court of Civil Appeals on that point, with the modification above noted, and hold that the trial court properly sustained the exceptions to that portion of plaintiff in error's pleading.

This being true, the questions raised in the briefs concerning misjoinder of the cross-action with an action in trespass to try title, waiver of right to rescind, the application of the two-year statute of limitation to the cross-action, and all other questions are out of the case and never were in it. They were not in it because they were not put into it by plaintiff in error's pleadings. His sole defense was based upon and grew out of the alleged promises and representations of Lee and the failure of their fulfillment and fruition and resulting damages. Since plaintiff in error's pleadings do not connect defendant in error with those representations and promises, the other questions sought to be injected into the case are merely hypothetical or academic. Therefore we do not pass on them.

We recommend that the judgments of the trial court and the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.