## LANCASTER v. GRAY COUNTY.

### No. 3801.

Court of Civil Appeals of Texas.  El Paso.

April 13, 1939.

P. P. Ballowe, of Dallas, for appellant.

Joseph Gordon, Jr., Co. Atty., of Pampa, for appellee.

WALTHALL, Justice.

With two exceptions by appellee which we note, the following statement made by appellant in his brief is substantially correct and we adopt it for this Court:

This suit was filed by B. T. Lancaster against Gray County and was heard in the trial district court in Gaines County on an agreed statement of facts.

The litigation arose out of the sale by Gray County of its certain school lands in Gaines County; the land in question consisted of Leagues No. 287 to No. 290, inclusive, and it appears from Exhibit "A" of the statement of facts that the Commissioners' Court of Gray County on the 3rd of August, 1907, sold all of the above named leagues of land in Gaines County to one W. L. Saye. Said land was sold for a total consideration of $61,992, or at the rate of $3.50 per acre. The original purchaser, in payment of the land, paid one year's annual interest in advance, as stipulated in the combined deed of conveyance and order of the Commissioners' Court of Gray County, and executed a vendor's lien note for the purchase price. Both the deed from Gray County, as well as the vendor's lien note itself, expressly authorized W. L. Saye to make sale and conveyance of said land in subdivisions of not less than 160 acres, and provided for the retention and express assumption of the proportionate amount of the indebtedness by each purchaser of a subdivision. The

agreed statement of facts shows that appellant became the purchaser of the 160 acres of land involved in this suit on the 1st of August, 1917, and that he paid to his immediate grantor $1600 cash and took a general warranty deed to the 160 acres in question, subject to the vendor's lien against the land, at the rate of $3.50 per acre. It appears from the statement of facts that all interest accruing against this 160-acre tract has been paid by the sub-grantees under W. L. Saye, including this appellant, from 1907 until 1927, inclusive, or for a period of approximately twenty years. No interest has been paid on the proportionate indebtedness against this tract since 1928, and no notice was given by Gray County of an intention to attempt to forfeit the rights of appellant in the land. Such was the status until the 14th of September, 1937, at which time the Commissioners' Court of Gray County entered an order cancelling out and purporting to rescind its executory contract of sale as to the entire four leagues of land, of which the 160 acres in controversy was a part. After passing such order as is shown in Exhibit "E", but so far as the record reveals without such order being entered in the Deed Records of Gaines County, the agents and representatives of Gray County disturbed the physical possession of appellant and itself took possession of said 160 acres. Thereupon, appellant filed suit on the 14th of January, 1938, in the District Court of Gaines County, which suit contained two counts, the first of which is in the ordinary form of trespass to try title, and the second count of which is in the nature of an equitable pleading asking that he be permitted to redeem the land by the payment of the delinquent interest, and that the cloud on his title by reason of the alleged forfeiture order be removed, and that the court order him to do such equity under the circumstances as might be deemed just and proper. The defendant Gray County answered said suit by setting up two counts in the alternative, one of which was a plea of not guilty, and the second of which was a petition for the foreclosure of the mortgage lien on the 160 acres at the rate of $3.50 per acre, etc. Appellant answered said original answer of Gray County by supplemental petition. Thereafter, on the 17th of May, 1938, the case was tried to the Court and a judgment was entered, which said judgment denied to the appellant any recovery whatever, and specifically rendered judgment in behalf of Gray County for title and possession of the 160 acres of land. To which judgment exception was duly taken and notice of appeal given to this Court.

The two exceptions to appellant's statement, noted by appellee, and which the record verifies, are: The order of the Gray County Commissioners' Court rescinding the sale of the land was made and filed in the Deed Records of Gaines County on the 18th day of September, 1937; the judgment rendered by the trial court in behalf of Gray County was for title and not for possession of the land.

## Opinion.

Appellant makes two assignments of error, and as germane thereto submits two propositions; the first is that, in an action of trespass to try title, where defendant (appellee) pleads not guilty in its first count, and in the second count asks for a foreclosure of its lien, and the prayer of its petition is merely for a foreclosure of the lien and does not pray for the award of title to the land, the trial court is without judicial power to render a judgment in favor of such a defendant for the title of the land, its specific prayer being that its lien against the land be foreclosed and that it be sold according to law, constitutes in law an election of remedies which deprives it of the right under its pleading or that of the plaintiff to have judgment rendered in its favor for the title to the land.

Under the above proposition appellant contends that appellee's right to a judgment for title to the land had its basis in the contract made with W. L. Saye, and that its right to assert superior title to the land was essentially predicated upon equitable and not upon legal right or title, and having made no demand for interest, in the absence of special pleading of its equities, appellee was not entitled to judgment. Appellant cites Marshall v. Mayfield, Tex. Com.App., 227 S.W. 1097, and Stratton v. Westchester Fire Insurance Co., Tex.Civ. App., 182 S.W. 4.

We have reviewed the facts in each of the above cases and have concluded, from the facts stated, that neither case has application to the present case.

In each of the above cases the land owner, in a former suit, had exercised his choice of remedies and recovered the land

on default of the payment of the purchase price. Such is not the case in this suit.

. ▮ It is said in 43 Tex.Jur., page 341, paragraph 196, "It is said to be the better practice for the vendor to unite his causes of action, pleading his remedies in the alternative," and referred to Gustafson v. American Land Co., ·Tex.Civ.App., 234 S.W. 244, affirmed, Tex.Com.App., 249 S. W. 189, and Stone v. Robinson, Tex.Civ. App., 218 S.W. 5, reversed on other points, Tex.Com.App., 234 S.W. 1094.

We understand the courts to hold that alternative statements of a single cause of action may be joined in one petition; the courts do not demand consistency where several causes of action are stated in the alternative; the practice of setting forth alternative grounds of action has been commended, the reason given being that if some of the counts are bad, but one is well pleaded and supported by the evidence, a dismissal will be avoided. 33 Tex.Jur., page 461, in discussing alternative causes of action in pleading, and referring in notes 19 and 20 to a number of ·cases as so holding.

· Such pleading seems to be the purpose of Rule Four by the Supreme Court for the district and county courts. The rule may have application. It reads: "The plaintiff, in the original petition, in addition to the names and residences of the parties and the relief sought, may state all of his facts, so as to present together different combinations of facts, amounting to a cause or causes of action, as has been the usual practice, or he may state the cause or causes of action in several different counts, each within itself presenting a combination of facts specifically amounting to a single cause of action, which, when so drawn, shall. be numbered, so that an issue may be formed on each one by the answer."

The proposition is not sustained.

Appellant's second proposition is to the effect that where the undisputed record shows that Gray County permitted appellant's default with respect to paying annual interest on the obligation to pass year in and year out for a period of approximately nine years without complaint, and before the suit was filed refused to accept all accrued interest, including interest on interest and attorneys' fees, before it would have the right to forfeit appellant's rights to said land, it was incumbent upon Gray County to revive its right to rescind, and in order to do so it was necessary for it to give to appellant distinct notice of its purpose and reasonable time within which to comply with its demand.

Appellee's counter proposition to the above is: That a county, being a political subdivision of the State and a trustee for the State for the purpose of protecting and perpetuating its school funds, cannot be guilty of laches so as to defeat its rights as a vendor to rescind an executory contract of sale of its school land upon default by the purchaser.

Without quoting at length from the agreed statement of facts and the exhibits, it is made to appear that appellant obtained title to the 160 acres of land involved here as an assignee of W. L. Saye, who purchased the land from Gray County under an executory contract of sale in 1907.

None of the principal on the purchase price has been paid and none of it was due and none would be due until 1947. Appellant had made no improvements on the land and had not paid any of the annual interest payments since 1927.

Appellee, on September 14, 1937, attempted to rescind the executory contract of sale for non-payment of the interest by entering into possession of the land and filing of record in Gaines County a copy of its Commissioners' Court order reciting such rescission.

Appellant filed this suit on January 14, 1938, in an effort to set aside appellee's attempted rescission of sale.

▮ It is settled by many decisions of the courts in this State that a vendor of real estate, who has not lost or waived his right, may rescind an executory contract of sale for a material breach of the contract by the purchaser. Barker v. Temple Lumber Co., 120 Tex. 244, 37 S.W.2d 721; Kennedy v. Embry, 72 Tex. 387, 10 S.W. 88; Scott & Carmody v. Canon, Tex.Com. App., 240 S.W. 304; Fullerton v. Scurry County, Tex.Civ.App., 143 S.W. 971, holding that a county could rescind the sale as to its school lands and that without notice to the grantees of such intention to rescind.

We think it is unnecessary to discuss the act or acts which show a loss or waiver of such right to rescind, since, in our opinion, no such act is made to appear in the record countervailing indulgence after default in payment shown, and there being no equities such as improvements to be

adjusted; and where appellee has entered into possession and has filed of record the order of its Commissioners' Court reciting the rescission of the contract, thus avoiding the necessity for a demand for payment, if such demand was necessary.

■ Appellant suggests that appellee had lost its right of rescission by reason of laches in asserting it. It may be that protracted delay on the part of a vendor under an ordinary executory contract of sale of land can amount to laches, which would defeat such right unless such right is revived by notice to rescind. But we think such rule does not apply under the facts of this case, where it is expressly agreed, as here, "That the said deed and note provided that in default of the payment of principal or interest, or any part thereof, due on said land, or any subdivision thereof, as provided herein, that it shall not be necessary for said Gray County to institute any legal proceedings for the foreclosure of the vendor's lien herein specified, but said County, its legal representative or agent, shall be and is hereby fully authorized to re-enter and take possession of said land or any subdivision thereof as may have been sold by the said W. L. Saye, without the necessity of notice or legal procedure."

Article 7, Section 6, of the Constitution of this State, Vernon's Ann.St., and Article 2824 of the Revised Civil Statutes 1925, provide that each county may sell or dispose of the lands granted to it for educational purposes "in such manner" as may be provided by the Commissioners' Court of such county.

■ As suggested by appellee, a county occupies a unique position with reference to conveyance of its school lands, in that it may dispose of them "in the manner to be approved by the Commissioners' Court of such county."

Here, in disposing of its school lands, the appellee county agrees with the purchaser that it should not be necessary to follow any rule different to that agreed upon, but that the county could, and without notice, upon default of the purchaser in the payment of interest, re-enter into possession and rescind the contract of sale without legal proceeding, that is, as held in West's Executors v. Cameron County, Tex.Com.App., 14 S.W.2d 836, 838, after referring to the above Article 7, Section 6, of the Constitution, it is said: "The county, therefore, had the right and power to disaffirm such sale [a rescinded sale] and to make a new sale of the lands upon such terms as the commissioners' court, in the exercise of its discretion, might provide." The question presented here has often been before the courts of this State where counties were acting purely in governmental affairs.

In the case of Delta County v. Blackburn, 100 Tex. 51, 93 S.W. 419, 422, the Supreme Court referred to many cases in this state and broadly stated that the county, in handling the school funds, acted for the state, and as such was sovereign to the extent that any defense of limitation to indebtedness was not available against it. The case involved the question of whether a county could collect interest payments on indebtedness due on the sale of its school lands which were more than four years past due. In the opinion, is said: "It is declared by the Constitution that the counties hold their school lands, and the proceeds thereof in trust for the public schools therein. Those schools are institutions of the state, established in the counties, and, as a part of the state's governmental policy, * * * the counties are thus trustees for the benefit of state's public schools, and suits brought by such trustees to protect the funds * * * are practically suits in behalf of the state."

■ In 10 Ruling Case Law, in Section 148, it is stated as a general principle that laches is not imputable to the government; that the doctrine is one of public policy. The same rule of law was accepted and announced in Marsalis v. Garrison, Tex. Civ.App., 27 S.W. 929; an exception to the rule is announced by the Commission of Appeals in McKinney v. Freestone County, 291 S.W. 529, in respect to a plea of stale demand, which is applicable to sovereignty, based on a rule of evidence.

We have found no reversible error, and the case is affirmed.